May it please the court. My name is Joaquin McCoy, I represent the appellant in this case, Mr. Curtis Phelps. I'd like to reserve two minutes for rebuttal. Very good. We are here because the trial court judge determined that there were no material issues of fact in dispute on Mr. Phelps' claims for race and retaliation discrimination, and as a matter of law, granted summary judgment. The court found that the plaintiff did not make out a prima facie case. However, there were facts, material facts that were presented to the trial court to support a prima facie case for race discrimination and retaliation, and that it is our position that the jury should have decided this case rather than the judge. The jury could have decided differently once they heard the live testimony of the witnesses. Now, in the interest of the time constraints that I have, I want to focus my argument on the retaliation claim. And as the court is aware, there were seven instances where we characterized the actions of GSA as adverse employment actions. And I want to focus on three. I want to focus on the letter of counseling, I want to focus on the level two performance evaluation, and the within grade increase that he had. Now, what the court has to look at, and what the trial court failed to look at, is the supervisor of Mr. Phelps was Ms. Gant, and her supervisor was Ms. Roberts. Now, early on, Ms. Gant was the co-worker of Mr. Phillips, and in January of 2005, she made a sexual advance toward Mr. Phillips in a meeting. Soon after, in June of 2005, she became his supervisor. Now, in January of 2005, he rebuffed her advances. Now, when she became his supervisor in June of 2005, he had a conversation with her, and one of the conversations he had, he stated that he had filed prior EEO complaints. And with respect to the incident that happened where she made this advance, she claimed that, oh, well, there was some activity between them. She bumped into his leg with her chair, he was jammed into her chair, and then her hand dropped down onto his leg. That was her testimony. Before you go much further, were these sexual advances ever reported to anyone? They were not at that time. Later on... They were not reported to anyone at the time? Not at the time of the event. When were they first reported? Okay. He first reported the sexual advance after he received a letter of counseling in September of 2005. Now, before the letter of counseling, and the reason why these facts are important, is before the letter of counseling, he asked to be... Oh, the letter of counseling is the protected activity? No, the protected activity, Your Honor, is the fact that he asked, initially he asked for a request to be in a training class. And in the request, they scrutinized his request. Oh, the training class was, the request for the training class was the protected activity? Your Honor, the protected activity was Mr. Phelps indicating in e-mails back to his supervisor that he was being treated differently than his Caucasian counterpart, Mr. Gerald, let's see what was his name, Mallison. And basically... The reason I'm asking this is that it seems a little uneasy to me. It seems like that you're supposed to show that he was engaged in a subject to adverse employment action. And then when you talk to me about the adverse protected action, or adverse employment action, it seems to me you're also suggesting it's the protected activity. Well, Your Honor, the protected activity was him complaining that he was being treated differently with respect to his request to attend a training course. Now, in that, he indicated in his e-mails, and there are, if you look at the defendant's excerpt of record... Well, I thought that you were suggesting that the retaliation that he was, retaliation problem was that he had engaged in a protected activity filing EEOC complaints. But, Your Honor, that is true. That's what you said in your memorandum. That's right. So, if in fact it's filing EEOC complaints, if he's filing the complaints against the same protected activity or adverse employment action, I'm trying to, you can't get retaliation for the very events you're complaining about. Well, Your Honor, let me give you an example. In October of 2005, Mr. Phelps filed an EEO complaint. In that complaint, he stated that he was unfairly scrutinized because his white counterpart, who also wanted to attend a training class, got approval, whereas he had to jump through hoops in terms of going to the regional administrator to explain why he wanted a training course. He also indicated in that complaint that he had rebuffed sexual advances of his supervisor, Ms. Gunn. Now, that was in October of 2005. In November, one month later, he received an unsatisfactory performance review. So that performance review was the lowest performance evaluation he had received in 20 years. He had received a level two on this performance evaluation. However... What complaint caused that? The complaint of October 14, 2005, his EEO complaint wherein he complained that he had rebuffed sexual advances of his supervisor, Ms. Gunn, as well as the fact that he complained that he was being treated differently than his Caucasian counterpart with respect to the training class that he wanted to attend. But he did attend the training class. He did attend the training class. The most important fact... But the question is, I mean, really the request for additional information, even taking the facts in light, most favorable to your client, is that he complained and he got to attend the class anyway. So how is the asking for more information a material effect on employment? What happened after he complained that his counterpart, who was similarly situated to him, got approved without having to go through his obstacles? They later gave him a letter of counseling. In that letter of counseling, they said, well, your emails back and forth related to your request to get a training was inappropriate behavior. And therefore, because he complained that he was being treated differently, he received that letter of counseling. Now, the trial court indicated that letter of counseling was not an adverse employment action. However, the copy of the letter was in his file for a year. So how was his employment adversely affected by the counseling letter or by the request for additional information? Did he lose any pay? He later lost pay. Right, but I mean, he didn't, but as a direct consequence of any of that, he didn't lose pay, promotion. There was nothing that in his job changed. Well, the rule, though, in the Burlington case, Your Honor, which is the standard here, is not whether he lost pay or whether he was terminated. The standard is whether an action taken by GSA could dissuade a reasonable person from making or supporting a charge of discrimination. So we submit that a jury should have decided whether or not Mr. Phelps receiving a letter of counseling was something that would persuade a reasonable person not to complain about the discrimination of desperate treatment, which related to his training class, his request for a training class. Well, so I mean, you're arguing for a fairly broad rule, it seems to me, that any time you have a reprimand or a letter like that after some action's taken, that it's a jury question. Well, I think it's a jury question if there are issues on both sides. They're saying that the letter was because of his behavior in writing the e-mails. And our position is that it was because he exercised protective activity. Now, with respect to his performance evaluation, I'd like the Court to note in the Defendant's Excerpt of Record 61, there's a note by his supervisor which indicated that, and it's dated August 12, 2005, if Curtis' performance does not improve in the next month and a half, his rating may slip to a 2. Now, that suggests, and the jury would believe, that he was at a 3 at the time this note was actually taken down. Now, the rating period was from October 1, 2004 to September 30, 2005. So there was one month left in this rating period in which Mr. Phelps was supposed to have been rated. I just want to make sure I understand where you're going, I think, with the argument. If things had just stopped there, wouldn't you say that that doesn't raise the level of an actionable complaint here? In other words, if you get a counseling letter that you think is protective, you get a bad rating, it's in your employment file, and nothing else happens, then are you saying that you think that that's an actionable material employment action? Or is your argument really contingent on what happened later? It is contingent on the fact that he complained, that he exercised a protective activity. No, I understand that. But we're talking about whether or not the consequence of that really rises the level in an adverse employment action. I understand your argument later about the transfer. But is it your argument that a counseling letter and downgrading performance by itself is a sufficient adverse employment action to meet the statutory requirements? Yes, I do. And what's your best case? Well, the best case is Burlington Northern because if someone gets a downgrade in their performance, it actually affects their employment opportunities in the future, first of all. Okay. No, go ahead with your argument. I just want to make sure I understood it. All right. So with respect to what we're looking here for is whether there is minimal evidence for a jury to decide this question, not for the judge to decide as a matter of law. And what I'm only submitting here is that a jury should have decided whether Mr. Phelps presented evidence that were in dispute with respect here to his working satisfactorily in his job position. Let me ask you a question, counsel, which kind of takes you out of your argument, but it's of some concern to me. You understand the concept of temporal proximity to the complaint? I do. All right. In Clark School District v. Breeden, the United States Supreme Court suggested that a time frame of less than three months can negate proximity. Your client arrived in San Francisco in October 2003. The first claim of retaliation was more than 20 months later. How proximate or what is the temporal proximity that we really can make to that? Well, Your Honor, the first act of protected activity in this case. Now, there were previous EEO filings, and actually the GSA settled with Mr. Phelps on his EEO claims prior to that. Are you saying that they are the complaints that we here are finding are the protected activity? Well, no. If they're not the protected activity, I'd like you to tell me. Are the complaints filed prior to arriving to San Francisco the protected activity that you say was done by your client that was then reacted to? Only to the extent that he told his supervisor when she first became his supervisor in June of 2005 that he had filed prior EEO complaints. That's it. That's the total of what you're suggesting. That's partly. That's it. And then the fact that he complained that his counterpart, his Caucasian counterpart who wanted to go to the training class wasn't scrutinized like he was. Let me ask you, the Caucasian counterpart that you're talking about, do I know what job that person held? He was in the same position as Mr. Phelps at the time in or about August. Do I know the conduct, what was done in that situation or what wasn't done? Well, Your Honor, it is in the record and it's clear that Ms. Roberts in her declaration indicated as well as Ms. Gant that Mr. Mellison was approved for his training. We don't even know. His job is the same? He was a customer service manager. Is that in the record? It's in the record, Your Honor. I'd like to just clarify one point. You appear, counsel, to raise an argument in regard to retaliation which is based on the fact that your client supposedly declined his supervisor's sexual advances. As I understand it, this argument was not raised in opposition to GSA's summary judgment motion below and the district court didn't address that particular argument. Am I right about that? Your Honor, we did raise that in the court below. So it was not argued because the court ruled without argument, but it was submitted in our papers. It's all throughout our briefs. Okay. That's a position that the GSA has taken, but that's not entirely true. We weren't able to argue because the court did not allow the parties to argue the matter. I think the question was did you raise it sufficiently in your papers and perhaps you could, if you have a citation, give it to the clerk afterwards for that. Okay. All right. Your time has expired, counsel, so we'll hear from the other side. All right. Thank you. May it please the Court. Good morning, Your Honors. Juan Walker representing the appellee. I want to first turn to the arguments that the panel was asking the appellant with respect to the sexual harassment. It's important to note that we pointed out in our papers a number of unsupported factual statements that the appellant has made, and part of it is the appellant's own testimony contradicts himself. He does not admit, excuse me, he does not acknowledge that he never told Ms. Gant, no, he doesn't acknowledge that he never told his supervisors about this alleged sexual harassment in his testimony. He comes out and says he didn't react to it, he didn't say anything to her at the time, and this was in January of 2005. He wants to use that incident to say when he didn't say anything to her at the time, when he didn't say anything to any of his supervisors, to Ms. Roberts, to the supervisors above him, said nothing to anyone, then he wants to come forward to August of 2005 and argue that the letter of counseling that he received is somehow retaliation for that. It's simply not supported by the record. Further, with respect to the incidents that he mentioned, the letter of counseling, there was support, there was a factual basis for the actions that the government took with respect to the letter of counseling. The e-mail traffic shows confusion that starts when the plaintiff doesn't answer the question as to why he needs his warrant. Then he goes back and forth with an insolent tone to his supervisor saying, you know, when the supervisor goes in to ask him, you know, he becomes very belligerent toward her, and based upon that report, this is based upon the report of Ms. Yent to Ms. Roberts, he gives a letter of counseling, and that was in August. It had nothing to do with his coworker, and that in order to have a similarly situated person to compare himself to, Mr. Melanson, you have to have similar behavior. There was no similar behavior. Mr. Melanson answered the questions. His training was approved. Once Mr. Phelps answered the question, his training was approved as well. There's no disparate treatment with respect to these individuals. I think the argument was that his coworker wasn't asked the questions. What does the record say about that? Well, the record shows that the coworker missed. The problem is, first of all, he doesn't, I mean, he didn't get a deposition testimony from this coworker, no declarations from this coworker. So the record is pretty sparse on what happened with respect to this coworker. However, what you can see from the record is that Mr. Phelps didn't answer the initial question, which was back in, I believe, June. No, I understand that. It seemed to be a factual conflict that I'm not sure is resolved in the record about whether the coworker was actually asked the questions or not, because his theory is go ahead. I'm sorry. I'm sorry, Your Honor. In the e-mail traffic, it does say Joe and Curtis, Joe was asked the same questions. We're asking these questions just because we have to be fiscally responsible. The training is out of town. So the reference is in the e-mail to him. Yes, Your Honor. Okay. It's to the letter of counseling. Okay. And I've also mentioned, it's also important that the appellant mentioned the supplemental excerpt of Record 61, this memo to file talking about August 12th with respect to the memo to file that Ms. Roberts wrote saying Curtis's behavior and Curtis's performance is low. If he doesn't improve it, he may get a 2. This predates any of the real EEO actions that plaintiff actually took. His EEO-protected activity would be, the first is the counseling in October of 2005, but there's no information in the record that shows that the supervisors were aware of that counseling. The first knowledge of any of the counseling comes when the filing happens in February of 06, and this is after the activity that plaintiff says is retaliation with respect to the cause of his retaliation. I think the record is pretty clear that the government had legitimate reasons for all the actions it's taken. Unless Your Honors have specific questions for me, then I would submit. Any further questions? Thank you. Thank you, Your Honor. We'll give you one minute. Use it wisely. We'll give you one minute. Use it wisely. Sure. Your Honor, one other adverse employment action that we characterized in our brief and in subpoena judgment was the denial of his within-grade increase. There's disputed facts on both sides. They say that he received a 2. His testimony is that his supervisor, Ms. Roberts, gave him a 3. The GSA actually gave him the increase after the rating period ended in October of 2005. So there was a dispute as to whether he had a grade 3, a level 3, or a level 2. And so if you also go back to, as counsel indicated, I referred to the letter of August 12, where his supervisor, Ms. Roberts, who was the decision-maker at the time, indicated that he was at higher than a 2. But if his performance didn't improve, that it was going to slip to a 3. And he only had one more month left in that rating period. So he was at a 3. He testified in his deposition that he was at a 3. And so the court should have allowed the jury to determine whether the GSA, their position was credible or not. Okay. We're good. Thank you, counsel. Thank you both for your arguments. The case as heard will be submitted for decision.
judges: Oliver, Thomas, Smith